Quest Diagnostics Good morning, Your Honors. May it please the Court, my name is Lisa Rodriguez, and I am here today on behalf of Plaintiff Richard Grandalski and the classes he sought to represent. I'd like to reserve three minutes for rebuttal. The primary issue I'd like to address here before Your Honors is the trial court's denial of class certification in this matter. This was not our first attempt at class certification. We had moved previously, the court denied the motion, but provided what we believed was a road map on how to do it better. And one of the issues that he had in his first denial was that the class was not objectively defined. Okay, well, when you say the class, there's multiple classes here, right? There are multiple classes, Your Honor. Can I get you to hesitate there for a minute and help me understand something about the classes? Because as I was reading them, and I freely acknowledge that I just might not have understood, but it kind of looked to me like the Anthem class was a subset or could be viewed as some kind of subclass of the post-EOB billing class. Is that a fair understanding of it? It is absolutely fair. And let me just start by saying we are here today appealing three denials. The post-EOB class, the Anthem class, which is a subset, and actually it was more applicable early on because the Anthem class also had breach of contract claims that we're not pursuing on the appeals. So you consider them together? They are together. It is a subset. There's no separate analysis provided by the court that's relevant on this appeal with regard to those two classes. So for our analytical purposes, those two are the post-EOB billing class? They are both the post-EOB billing class. And then the third class that we seek appellate review on is the debt collector victims class, and that's against Quantum and Credit Bureau Central under the Fair Debt Collection Practices Act. The court's rationale for denying the post-EOB class is comprised of all privately insured patients who were billed by Quest in excess of patient responsibility listed on the explanation of benefits for the EOB after Quest had the EOB in hand, and which patients then paid the bill. Can I ask you a question? With respect to that last point about paying the excess amount, this is something that wasn't really brief, but I think it was part of a prior maybe Civil RICO aspect of this. Your class rep is Grandowski, right? Yes. How is he typical if he didn't pay any excess amount? He did pay excess amounts. I thought the record said he didn't pay. No, he did pay excess amounts, and actually he paid excess, and that's why the class was in the first classification motion, we had defined the class to be people who were billed in excess of the EOB, and the trial judge said, uh-uh. But what's your predominant legal or factual issue here? Actually, your predominant issue is why. Your predominant issue is why did this happen? And there's all kinds of reasons why it might have happened. What's your underlying, common, predominating issue? And, your Honor, there really aren't all sorts of reasons, and the defendants did a wonderful job in making it look like a very confusing issue. And actually... Well, is there a fraud at the bottom of this? I mean, what is the conduct of Quest that is going to be actionable in terms of, you know, the plaintiff saying, aha, you did us wrong, it was wrong, therefore we have a right to go against you? Both Quest and the court acknowledged that the EOB is controlling. The insurance company is the arbiter of what is owed by the insurer. So you're saying if someone got billed more than what the EOB said, then there is just no way but that that was a fraudulent or wrongful excess bill? Quest acknowledges itself that it gets its marching orders, if you will, from the insurance companies. With all respect, Ms. Rodriguez, that doesn't answer the point. In fact, your opening brief at page 15 says the class definition, quote, contains no explicit or implicit mandate that a patient wrongfully sustained a loss or was damaged thereby in order to qualify for class membership. If I've read that right, your position is that under Sullivan, delighted as I am to be walking down memory lane on that again, that under Sullivan there doesn't have to be any wrongful act at all. I mean, the class definition has no explicit or implicit mandate that a patient wrongfully sustained a loss or was damaged. The position you're taking, if I understand that correct, is we don't have to say anybody was wrong. Have I understood it correct? Yes, you're right. I do believe that you don't need to read liability into the class definition. At the same time, and this was – But doesn't there have to be some prospect of liability, right? Doesn't there have to be some statement that somebody did something? I mean, I personally think Sullivan was not such a great decision, but I was relatively lonely out there on that. I agree. But even on Sullivan's terms, you know, the majority was of the view, I thought that somebody had to be wrong. And Quest is wrong. Quest is wrong. And this is where it's a very simple – No, not that they're wrong, but that you're wronged. They're wronged. The class is wronged when Quest bills in excess of the EOB. Because it was fraudulent, because it was intentional, because it was knowing, or because they made a clerical mistake? It doesn't matter. The patient's responsibility is to pay the EOB. Quest has the EOB in hand. Quest has the EOB, and it says, patient, you owe $100. They take this EOB, they send it to the patient, and they say, you owe $200, and the patient pays it. Quest knows that that patient's responsibility is $100. If they have a question about whether or not the amount on the EOB is appropriate, they can go back to the insurance company, they can call the insured and say, we've got an issue between what we've been told. Is it actionable just because they do that? Doesn't there have to be some underlying thing? I mean, just, you know, there's no liability for mistakes. I mean, everybody thinks because somebody did something wrong that it's actionable. Well, maybe it's a mistake. Well, and that's a question – that's not a question to be determined at the class certification stage. Individualized questions such that class status really doesn't get to the common theme here. Well, the court acknowledged that there were – the court acknowledged, and defendants take some issue with this in their papers that we don't know how many people this applied to, but numerosity has never been an issue, and the court recognized in early arguments. I agree. We're talking about predominance, right? There were thousands of people. Okay, so you can't – the fact that there may be – there may be rebuttal instances for a contract here or there. Oh, I don't take this to be about rebuttal, Ms. Rodriguez, and what we're trying to get you to answer is the – we understand the central argument of your point to be. As you put it, they artfully said this is complicated. Well, what if, indeed, it is complicated? What if you've got an ELB that comes from a primary insurer and then one that comes from a secondary insurer? What if you've got a keystroke error? What if you've got a doctor that misfills inpatient information? What if you've got a patient who has a brain freeze and gives incorrect information? And it turns out, under all those circumstances, that the ELB is not accurate and something different has to happen. That's something that would be a matter of individual proof in each individual case, would it not? But your premise, Your Honor, is incorrect because you said what if the ELB is incorrect? What if the patient provided incorrect information? What if there was supplemental insurance? What if there was a keystroke? We're not talking about that situation, and that is why this class is readily, objectively ascertainable. We are talking about Quest knows what the patient responsibility is. It has the ELB. The insurance company has made... By definition, it knows what it knows, but it doesn't know what it doesn't know, right? It doesn't know, for example, if there's a keystroke error and somebody inserted a zero between a six and a four, that the ELB is inaccurate. It doesn't know that until there's some reason to surface it and to fight about it. But if the ELB is... If there's a keystroke error on the ELB and the ELB says, patient, you owe $600, not $60, and Quest sends that ELB to that patient, that patient's not in the class because Quest did not take an ELB that had $60 on it and say, class member, you owe $600. And that's the... How would you know that, Ms. Rodriguez? That's the challenge I'm having, and I would be grateful if you could straighten me out on it. What is it in the class definition that would allow a court and Quest to know, before you got to trial and you were dealing with trial management issues, whether the ELB that you're talking about is an ELB that's infected with that kind of error or not? I think I start with the premise, and it's different from Your Honor's premise. There is never an ELB that's affected with an error. Those ELBs are not in this class. We are talking about a class where the insurance company has been the arbiter of the amount owed. And everybody recognizes that's the case. The insurance company sends that determination of the patient's responsibility to Quest. Quest has that ELB, but instead of... Can you walk through a scenario with me and tell me whether this person would be in or out of your class? Yes. So assume that the ELB says a patient owes $35 for some diagnostic test. And Quest bills the patient that $35. But there's a secondary insurer, all right, who also sends an ELB to Quest. And it comes in after the primary one, and it says $25. Under your definition, Quest is billed in excess of an ELB, right? It's billed $35. That doesn't fit. That person's not in the class. It's if they're billed $40 instead of $35. Right. No matter why, and we don't know why. It doesn't matter why. They know what the patient's responsibility is. They have contracts with the insurance providers who are the arbiters. Why does it not apply if you say that doesn't apply? Your class definition is for an ELB, right? And defendants raise that particular scenario. Right. That's why I'm asking for it. And interestingly enough, and that person ultimately does fall into the class, but I'll tell you why. Not for that, you stop too soon. So they send the first ELB for $35. The patient gets it. There's a secondary insurance. That ELB comes back and says, no, they only owe $25. So now Quest knows that there's a difference between the first ELB and the second ELB, and they then send a bill to collect the additional $10. Once they have the second ELB in hand that says you owe $25, they've still done that patient for $10. And we know that the class and that the second is directed by Sullivan. You have to look at first the defendant's common behavior. The court gave three-mile posts. And what is the common behavior? The common behavior is defendants billing an amount in excess of an ELB. But in Sullivan, the conduct was wrongful. It was wrongful conduct that infected the whole class. It was the antitrust conduct of DeBeers. Here we have a class, and, you know, you're saying it's presumptively wrongful, but we don't know that. But it is wrongful. And I know that the court below didn't feel comfortable saying that billing in excess of an ELB was a proxy for wrongfulness. Let me ask you. Your time is up. But let me direct you to conflict of laws. You're arguing that there should never have been a conflict of law analysis by the district court, but you can't really mean that. I mean, in Sullivan we said, in fact, that because it was a settlement class, you don't need to look into the manageability and the evidentiary problems that would be occasioned by conflict of laws. And, in fact, in cases we've said it's error when there is a case that's going to be litigated not to look at conflict of laws and consider the manageability. Can you, with a straight face, argue to us that the district court was wrong in looking at the conflict of laws? No, Your Honor, not that they were wrong looking at the conflict of laws. I think the argument is, one, that the restatement section that they used was wrong in the first instance, and we know that from Manoskela. But I think that it is appropriate to look at the conflict of laws. And, again, I think, and there's nothing more intimidating than arguing Sullivan before Your Honor. I can think of some things. But it was not limited to settlement classes. And there's a discussion talking about litigation classes, and that is why below. . . There was a very specific discussion of the difference between settlement classes and litigation classes, and the concurrence was all about that, right? It was, but also there was a discussion about groupings. And we provided a grouping that made sense. We took out, Your Honor, we took out those states that don't provide for class actions. South Carolina was taken out. Virginia was taken out. Montana was taken out. But you didn't go through all the different statutes and how they could be, based on the elements, how they could be grouped coherently so that you were really proving the same thing in different groups based upon the statutory provisions, did you? Well, Your Honor, we didn't start from scratch, but we had Judge Sarris's opinion in the AWP case. We had the judge's opinion in VIOX. And we had the National Consumer Law Center's statute-by-statute analysis that did do that. And we didn't come up with the groupings ourselves. We borrowed them, but they make sense in this context as well. All right. Thank you. Good morning, Your Honors. May it please the Court. Rob Hochman on behalf of the defendants. I'll try to focus on the EOB classes as well. To begin with your question, Mr. Grandolski claims to have paid in excess, not of an EOB in the sense that the class is defined. The post-EOB class, as they evolved, and we should talk about the evolution of this case, which I think informs the understanding. But the way that the class definition they landed on was Quest issues a bill for its services in excess of what the EOB tells the patient. And Quest is the patient's responsibility for its services. The only excess amount that Mr. Grandolski claims to have been billed is the debt collector collection fee that's the subject of the debt collection class. That's not this class. That's a different issue. And the reason why that's important is because, as I think Your Honor's question was getting at, this is a class definition in search of a class. There's nobody here. And I think the way the case evolved helps us understand how we got to this very strange place. Well, the people who are here are people who paid more than the EOB. I mean, that's the conclusion. Well, they paid more than an EOB. But as Judge Jordan went through in some detail, I think as you did as well, Your Honor, there's all sorts of reasons why that might happen that have nothing to do with Quest. Well, let me ask you specifically then, is Richard Grandolski then, is he an appropriate class representative for the post-EOB class? No. I don't think he is because he did not get a bill that charged him for Quest services in excess of the amount that the EOB said. He had a $20 co-pay. He was told to pay his $20 co-pay. And that said, he was also told that that's the subject of the debt collector class, to pay a $10 debt collection fee. Different class. Not this class. And that's an important distinction. But he's not typical. So he's not typical. And there's nobody. None of the numerous named plaintiffs in this case fit the actual class definition. The one case that I think you were alluding to, there is one class member, one named class member, who had a $60 bill, and there was a decimal point moved, and it was $600. But she didn't pay. And that goes to another important point about this being a class definition in search of a class. They didn't come up with somebody who fits this. And the only time they didn't find somebody, we actually went looking in connection with the New York AG suit for people who are roughly like this. And as we detail in our brief, and as is discussed in the Hanlon Declaration in our appendix, we went through, there's active files and there's archive files. It's much easier to search the active files. Very, very difficult to search archive files. We looked at 2.5 million transactions, and we found 75 people out of 2.5 million, 75 transactions, where there was a bill issued that at least arguably was in excess of an EOB we had in hand at the time. And every single one of them, every single one of them was resolved in the ordinary course without anybody having to sue anything. The fact is, this is a complicated process. Mistakes get made, and they get resolved. And that's what's important. But some portion of this group ended up paying more than they were supposed to, and there is an unjust enrichment claim here. Does it legally matter where the mistake came from in that context? If Quest is the one that ends up with money in its pocket, is it unjustly enriched, and is there a class mechanism to address that? Well, as I understand it, at this point, there is no unjust enrichment claim. There's just the consumer fraud claim. It's the only thing that's been brought up on appeal. And the reason why that matters is because the refund, this starts to bleed into the variation in state law, Your Honor. There's a variety of different variations in state law, and the district court went through this in some detail when they first tried to certify their massive class. I've got to stop you for a second. Yeah, sure. And I'll be asking Ms. Rodriguez this, too. Things are not being appealed. Some things are. You're telling me that the unjust enrichment claims, they're out of the case now? It was my understanding that they brought up only the consumer fraud putative class, but I might be mistaken about that. I think it's briefed. I think it's in there. Oh, my apology, Your Honor. You're right. I'm thinking of RICO. My mistake. I'm sorry. I'm sorry. Does it matter, you know, whether Quest threw the punch or not, if it's the one that's got the money in its pocket? They cut off the class definition at the point that there's a payment made, but Quest also has processes as these 2.5 million transactions to refund. So they should refund. They cash it, and they refund. And anybody who's been refunded doesn't have an unjust enrichment claim either, even though they're in the class as defined. So that doesn't get you over the hump either. And then the consumer fraud claims, one of the lines of state variation that the district court had discussed involved the need to prove ascertainable loss. Well, again, if you've been refunded before anybody ever filed any kind of suit, you don't have any ascertainable loss. Scienter, state of mind, is another point of wide variation. None of this, none of this is discussed in their presentation. They're grouping that they proposed. I'm sorry. Go ahead. No, please. What is the theme? What do you ascertain is the plaintiff's theory of what you were doing here? Well, you know, and this is where. It ends up being wrongful. Yeah, this is where. All the allegations, you know, have to be, I mean, unjust enrichment, i.e., unjust, you know, conversion. Claims have to do with some conduct on your part. It might help to put ourselves back in the shoes of the district court who lived with this case from the beginning. Remember how the case started. Basically the position was that if Quest sent a bill that turned out to be wrong for any of the reasons, whether it's a secondary insurer we didn't know about, whether it's some mistake, any time we sent a bill out that turned out to be wrong, we violated a contractual or a statutory home to homeless provision, and we were liable for that. That was the theory. They couldn't certify that class. That's the wrongful act, Your Honor. They couldn't certify that class. So then they changed the class definition under what they thought was, what they're claiming now, they thought was the roadmap that decision provided. Oh, well, then we'll just use any EOB that Quest had in its hand at the time. Of course, that doesn't solve any problems with state law variation. It doesn't solve any problems with figuring. Now you've created a new problem. You have to figure out who those people are. And as we've been discussing this morning, it's very difficult to do that, and we don't know anybody who's like that. So what we're left with, I think, from the district court's perspective, they didn't change their complaint. They didn't amend their complaint at all. The same people are prosecuting the case. So there's this mismatch between the class they want to bring and the complaint that's being prosecuted under this class. They didn't amend anything. Did I understand you to make a complaint at some point that they were trying to adjust the class on appeal in a way that was inappropriate? Yeah, well, that turns out because that has to do with the debt collector victim's class. That's not the post DOB, and I can turn to that if you'd like, Your Honors. I mean, essentially what happened there is the case, again, the class that they filed in the district court asked for debt collectors, victim's class against four different debt collectors who had engaged in two different kinds of wrongs, only one of which was the addition of a fee. It certainly had to do with language, sort of threatening language in the letters. On appeal, they basically dropped the threatening language and are only appealing with respect to the wrong for fee, and this only has to do with debt collectors. And legally, that is a problem because of what? You've said that they can't do that. They're not allowed to do that. I'm just trying to figure it out. Yeah, I mean, I think the idea is that when you present your case to the district court, you're basically giving the district court, you're saying this is what we think we should be allowed to go forward on. And when the district court says, you know, that doesn't work, you shouldn't be able to pull the rug out from under a district court by going up on appeal and trying to fix it, make it a little bit more narrow, make it a little bit more manageable, try and tweak around the edges to make it better than you ever asked the district court to do in the first place. That's all we're saying about that. Ultimately, you know, we didn't make a big deal about that. We were just pointing it out for your benefit that you know that that's part of what's going on because it's part of a practice in this litigation of, you know, trying to define classes and then worry about who's going to bring it, bring things forward later, trying to refine classes on appeal. Ultimately, with the debt collector victims class, the district court said Mr. Grandolski's not a class rep and that's because he didn't get a written demand. And, you know, you can look at the deposition. Was anything ever turned up in terms of a writing? No, that's just what I was going to say. You know, he says at his deposition, page 207 to 208 of his deposition, he's asked, so when did you get this, when did you get the written demand from the debt collectors? He says, I never got a written demand. I only talked to them on the phone. Their response is not to say actually he was mistaken, here's the piece of paper, or actually he said he took it back later, he said something else. The response is to point to testimony about the general practice of debt collectors, which of course doesn't necessarily have to have happened in Mr. Grandolski's case. And as we know from all the kinds of errors that could happen over the course, people give wrong addresses. It certainly wouldn't be the first time a debt collector didn't have the proper address of someone from whom they're trying to collect a debt. So all sorts of reasons why the writing might not have arrived there. The district court said there was really no, that the plaintiffs had not shown a way to really group these state laws. Did you offer contrary evidence as to the lack of manageability, et cetera, of proceeding under the various state laws? Yeah, primarily what our position was is, you know, and this is from the case, even their favorite case like AWP. If you look at that case, which is as far as, you know, they do not, that case makes very clear, says, you know, litigation classes of, you know, variety of state consumer fraud cases are, quote, hen's tooth rare. It's a Herculean task to show it. And even Judge Saris in that case said reasonable minds could differ about whether it was proper to do it in that case. And part of the reason for it is the variations of state law having to do with things like defendant's mental state, which I talked about, which is well documented, that maybe knowledge or willfulness is required in some states. And that has particular bite here, remember, because we catch, on the rare occasions when mistakes are made, when we come to know about them, we correct them. So is there liability in those states? They say they exclude all the states that don't allow for class actions, but Arkansas, Kentucky, and Georgia are in their class definitions, are in their groupings. And, of course, we talked about earlier the need for, to prove ascertainable loss. So I think that, I think it's pretty clear. Ascertainability, speaking of ascertainable, instead of ascertainable loss, the district court relied pretty heavily on the notion of the class being ascertainable. Is that an appropriate analytical route here? Is the question ascertainability of the class or is it predominance? Well, I think it's primarily predominance, personally. But I think there's an ascertainability element here because of the on-the-fly change of the class definition in a way that kind of took this case as it's been litigated and then said, now we're going to ask you to find, to go and find within this pool of people who got these bills that we think ultimately proved to be wrong, and go and find those whose, the sequence of which documents went through is precise. Would you agree that on its terms, not saying whether the class is a class that should be certified or not, but because of perhaps other issues like predominance, but on its terms, it's ascertainable? It's objectively ascertainable? Well, objectively ascertainable is different. I think the standard is reasonably ascertainable. In other words, it would not, you can define a class as anyone who walked into a Quest lab. That's a reasonably ascertainable group of people. Precisely, so if you had that, you'd have an ascertainable class, not necessarily a class that could be certified, but an ascertainable class. It's really, I think we've used it mainly in a paper trail kind of situation. Somebody buys tires, somebody buys bare aspirin, and they say, oh yes, I'm in the class. You go, okay, how are you going to prove it? Because I say so. But here, you have a paper trail. Well, except what makes it difficult is that the paper trail is actually immensely difficult to track down, because it's coming from all sorts of different directions,  You made the argument it's largely manual, which is a problem, but why should the plaintiff be doing that? No, and I understand that. And I think in a case where you had a real robust predominance case that the plaintiffs don't have in this case, there might be ways to work around that. I'm not here to tell you that just because a company doesn't have good record keeping that you have to deny a class. That's not our position. But our position is this case was really, the class definition manufactured on the fly. It doesn't fit. And the district court was given no path forward, really, with how this class could possibly be litigated, either as a matter of predominance, and especially as a matter of the manageability with respect to the multi-state issues. And so it could not have been an abuse of discretion to deny, to certify the class. If there are no further questions, we respectfully request that you affirm. Thank you. Ms. Rodriguez? Thank you, Your Honors. Just a couple things on appeal, on rebuttal. The district court did hold, because there were summary judgment motions filed after the denial of class certification, that billing in excess of an EOB was improper. And so we have that finding. And that's as to Grandowski only. It wasn't a class claim. But he made that finding. If they have an EOB and they bill more than the EOB, and it's paid, it's wrongful. And I think that that's important. And I think that that. Presumably there was no excuse there. There was no clerical error. I mean, as to Grandowski, it was cut and dried. But that doesn't mean it would be in every case. But, again, I don't think that the clerical error is, I think that's a red herring. Because they know the amount that the insurance company said was owed. And so if they bill more than that, it doesn't matter. That's their marching order. How about the refunds? How about the refunds? How do you account for that? Not everybody is refunded. But some are. But some are. But they still billed in excess of this. So we're getting back to the question of where's the wrong. But even before you get to the question of where's the wrong, when you say Mr. Grandowski, the court may have financed him, doesn't that undercut your position, Ms. Rodriguez? Because that's the example of a court making an individualized determination in an individual case, not a court looking at a grand class and trying to do it. I mean, you've cited the exception that proves what your opponents are saying, aren't you? I don't believe so. I think what the court said is that billing in excess of the EOB is wrong. For Mr. Grandowski. For Mr. Grandowski. But I think that the finding as to Mr. Grandowski is equally applicable across the board because there's no excuse. And I guess this is where I differ with some of your questions. There's no excuse for billing in excess of what the insurance company told them the patient owes. There may be no excuse, but maybe it's negligent. Well, that doesn't excuse. At this stage of the litigation, that doesn't defeat class certification. The fact that there may be. Consumer fraud class? Well, and we do have the enrichment class, if Your Honor finds that there are individual issues as to the consumer fraud class, but I don't believe so. I think to say that they negligently billed, they know what the amount is. So a keystroke error in every instance. And I also take issue with the supplemental. Numerosity was not an issue in the court below. How many do you contend were, bottom line, wrongful? Well, the court in its decision talked about thousands. That information is exclusively in the hands of defendants. We have anecdotal information, but I don't know, Your Honor. Thank you. All right, thank you. Cases, we'll argue, taken under advisement. Ask the clerk to recess court. Oh, we're going to stay. Oh, yeah, that's right.